# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
### APPEAL NO. 24-3940

**GPAT PATTERSON, Ph.D.,**                              **APPELLANT**

**v.**

**KENT STATE UNIVERSITY,** *et al.*,                      **APPELLEES**

On Appeal from:
The United States District Court, Northern District of Ohio,
Hon. John R. Adams Presiding Judge,
Case No. 5:22-cv-2052

---

## BRIEF OF APPELLANT GPAT PATTERSON, Ph.D.

---

Respectfully submitted

*/s/ Justin Whittaker_____*
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
Tel: (513) 457-5545
Fax: (513) 436-0689 (fax)
Justin@WhittakerLawFirm.com

**Appellate Counsel for**
**Appellant GPat Patterson, Ph.D.**

## I.    CORPORATE DISCLOSURE STATEMENT

Pursuant to Appellate Rules 26.1 and 28 and Local Rule 26.01, Appellant GPat Patterson, Ph.D. is not a subsidiary or affiliate of a publicly owned corporation within the meaning of Appellate Rules 26.1 and 28, Local Rule 26.01, or otherwise. To Dr. Patterson's knowledge, none of the Appellees is a subsidiary or affiliate of a publicly owned corporation. The undersigned certifies that this information is accurate as of **December 27, 2024**. Any changes to this information during the pendency of this case will be disclosed to the Court.

Respectfully submitted,

*/s/ Justin Whittaker*_____
Justin Whittaker, Esq. (0093212)

**Appellate Counsel for**
**Appellant GPat Patterson, Ph.D.**

## II.    STATEMENT IN SUPPORT OF ORAL ARGUMENT

The undersigned respectfully submits that oral argument would assist the Court of Appeals because of the novel issues raised below and on appeal, particularly related to the fallout from the Supreme Court's decision in *Muldrow v. City St. Louis*, 601 U.S. 346 (2024), which upended the legal standard for all of Dr. Patterson's claims below in the middle of the parties' briefing.  Issues of first impression also persist as to the application of Muldrow to disability discrimination and retaliation claims.

# **TABLE OF CONTENTS**

**I.    CORPORATE DISCLOSURE STATEMENT** …………………..………ii

**II.    STATEMENT IN SUPPORT OF ORAL ARGUMENT**………………..iii

**TABLE OF CONTENTS**..…………………………………………………iv

**DESIGNATION OF
RELEVANT DISTRICT COURT DOCUMENTS**………….....…………..vii

**TABLE OF AUTHORITIES**……………………………………………....ix

**III.    STATEMENT OF JURISDICTION** …………………………….....1

**IV.    STATEMENT OF THE ISSUES**…………………………………..…1

**V.    STATEMENT OF THE CASE**…………………………………….…3

    **A.    Statement of Facts**.…………………………..……… 3

    **B.    Relevant Procedural History**……………..……………………8

    **C.    Rulings Presented for Review**…………...……………….…..9

**VI.    SUMMARY OF THE ARGUMENT**…………………………..……10

**VII.    ARGUMENT**…………………………………………………..11

    **A.    Standard of review**………………………………………………11

    **B.    *Muldrow* repealed the "materially adverse" standard for analyzing Title VII discrimination claims**…………………………………13

    **C.    Summary judgment must be reversed on Dr. Patterson's Title VII gender discrimination claim because the District Court applied the incorrect legal standard.**…………………………………………15

        **1.    Dr. Patterson showed "direct" evidence of discrimination in the denial of their transfer request**………..…………..………15

2.      Dr. Patterson also showed "indirect" evidence of discrimination as to every "adverse action."..................19

3.      The District Court erred by failing to apply the correct "some harm" standard to showings of "adverse action."…...……20

4.      Dr. Patterson identified a genuine dispute of material fact suggesting that KSU treated *two sets* of non-protected employees more favorably than them...……………………………...………………28

D.  The District Court erred by granting summary judgment on Dr. Patterson's claim for First Amendment retaliation……….…..34

1.      The District Court first erred by disregarding two "adverse actions"……………………………………...……….34

2.      Dr. Patterson engaged in constitutionally protected speech criticizing illegal discrimination and other matters of public concern………………………………………….…37

a.      Dr. Patterson spoke as a private citizen…………...37

b.      Dr. Patterson spoke on matters of public concern by criticizing illegal discrimination and other matters of public concern…………………………………...38

c.      Dr. Patterson's interest in speaking freely dwarfs any interest KSU has in organizational harmony……….43

3.      Dean Munro-Stasiuk took adverse action against Dr. Patterson that would chill a person of ordinary firmness from continuing to speak…………………………………44

4.      The Dean took adverse actions against Dr. Patterson because of the content of their speech…………………..………45

          5.      **The Dean isn't entitled to qualified immunity because Dr. Patterson's First Amendment right to be free of retaliation for objecting to illegal discrimination is clearly established……………………………………………..…….46**

    **E.     The District Court erred as a matter of law by disregarding Dr. Patterson's Title VII retaliation claim *in toto*………..……………48**

    **F.     The District Court erred as a matter of law by granting summary judgment on Dr. Patterson's Section 504 for "regarded as" disability discrimination…………………………………..…..52**

**CONCLUSION**………………………………………………………..56

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
……………………………………………………………………….57

**CERTIFICATE OF SERVICE**……………………………………………58

# DESIGNATION OF
# RELEVANT DISTRICT COURT DOCUMENTS

Complaint, R.1

Second Amended Complaint, at R.37-1

Deposition of GPat Patterson, Vol. 1, R.56

Deposition of GPat Patterson, Vol. 2, R.57

Deposition of GPat Patterson, Vol. 3, R.58

Expert Report of Jennifer Wingard, R.33-1

Deposition of Robert Trogdon, R.61

Deposition of Jennifer Weingard, R.63

Deposition of Julie Mazzei, R.64

Deposition of Tammy Clewell, R.65

Declaration of Babacar M'Baye, R.66

Declaration of Mandy Munro-Stasiuk, R.69

Motion for Summary Judgment of Kent State University, at R.70

Motion for Summary Judgment of Mandy Munro-Stasiuk and Julie Mazzei, R.71

Deposition of Mandy Munro-Stasiuk, Vol. 1, R.72

Deposition of Mandy Munro-Stasiuk, Vol. 2, R.73

Motion for Partial Summary Judgment of GPat Patterson, R.75

Opposition to Motion for Partial Summary Judgment of Kent State University, R.77

Opposition to Motion for Summary Judgment of GPat Patterson, R.85-1

Reply in Support of Motion for Summary Judgment of GPat Patterson, R.89

Motion to Strike/Disregard of GPat Patterson, R.90

Deposition of Mandy Munro-Stasiuk as Rule 30(b)(6) Witness, R.91

Reply in Support of Motion for Summary Judgment of Julie Mazzei and Mandy Munro-Stasiuk, R.92

Reply in Support of Motion for Summary Judgment of Kent State University, R.93

Brief in Opposition to Motion to Strike of Mandy Munro-Stasiuk, R.94

Motion for Leave to File Supplemental Authority, R.97

Memorandum Opinion and Order, R.100

Judgment Entry, R.101

Notice of Appeal, R.103

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)...............................................53

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)...............................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................................34

*Amini v. Case W. Reserve Univ.*, 5 F. Supp. 2d 563 (N.D. Ohio 1998).....................30, 32

*Bard v. Brown Cty.*, 970 F.3d 738 (6th Cir. 2020)............................................................36

*Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764 (6th Cir. 2011).........................52

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)..................................................................44

*Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868 (6th Cir. 2024)..................................13

*Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, (6th Cir. 2022)....................................27

*Bonaffini v. City Univ. of N.Y.*, No. 20-cv-5118,
  2024 U.S. Dist. LEXIS 174846 (E.D.N.Y. Sep. 25, 2024)....................................24

*Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*,
  667 F.3d 669 (6th Cir. 2011)..................................................................................27

*Bostock v. Clayton Cty.*, 590 U.S. 644 (2020)..................................................................14

*Bledsoe v. TVA Bd. of Dirs.*, 42 F.4th 568 (6th Cir. 2022)................................................28

*Bracken v. Dasco Home Med. Equip., Inc.*, No. 1:12-cv-892,
  2014 U.S. Dist. LEXIS 123978 (S.D. Ohio Sep. 5, 2014)...............................52-53

*Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394 (6th Cir. 2007)......................36

*Broach v.City of Cincinnati*, No. 1:12-cv-66,
  2013 U.S. Dist. LEXIS 97643 (S.D. Ohio July 12, 2013)......................................25

*Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019)....................................42, 47

*Carroll v. Gates*, No. 2:09-cv-385,
  2010 U.S. Dist. LEXIS 118539 (S.D. Ohio Nov. 8, 2010).....................................25

*Connick v. Myers*, 461 U.S. 138, 147 (1983).......................................................37, 38, 40

*Crane v. Mary Free Bed Rehab. Hosp.*, 634 Fed. Appx. 518 (6th Cir. 2015)..................15

*Cornelius v. NAACP Legal Def. Fund, Inc.*, 473 U.S. 788 (1985)....................................42

*Davis v. Orange Cty.*, No. 23-12759,
2024 U.S. App. LEXIS 17964, at *10 (11th Cir. July 23, 2024)............................56

*Dawson v. Dorman*, 528 F. App'x 450 (6th Cir. 2013)................................................13, 18

*Denman v. Youngstown State Univ.*, No. 4:05-cv-1910,
2007 U.S. Dist. LEXIS 70090 (N.D. Ohio Sept. 21, 2007)....................................15

*Dixon v. Blinken*, No. 22-cv-2357,
2024 U.S. Dist. LEXIS 163267 (D.D.C. Sept. 11, 2024)..................................14, 24

*EEOC* v. *Abercrombie & Fitch Stores, Inc.*, 575 U. S. 768 (2015)....................................54

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998).....................27

*Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*,
624 F.3d 332 (6th Cir. 2010)..................................................................................39

*Everson v. Leis*, 412 F. App'x 771, 776 (6th Cir. 2011).....................................................32

*Florek v. Creighton Univ.*, No. 8:22-cv-194,
2024 U.S. Dist. LEXIS 195494, at *58 (D. Neb. Oct. 18, 2024).......................56-57

*Freeman v. Potter*, 200 F. App'x 439, 443 (6th Cir. 2006)................................................21

*Frenchko v. Monroe*, 672 F. Supp. 3d 421, 455 (N.D. Ohio 2024).................................41

*Grinnell v. City of Taylor*, No. 21-2748,
2022 U.S. App. LEXIS 13540 (6th Cir. May 18, 2022)....................................49-50

*Hale v. Boyle Cnty.*, 18 F.4th 845, 851 (6th Cir. 2021).......................................................1

*Henderson v. United States*, 133 S. Ct. 1121 (2013)........................................................19

*Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010)...........................................44

*Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*,
840 F. Supp. 2d 1013 (S.D. Ohio 2011)................................................................35

*Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169 (6th Cir. 2008).................38

*Hunter v. Gen. Motors LLC*, 807 F. App'x 540, 544 (6th Cir. 2020)..............................19

*Hunt v. Thorp*, No. 2:21-cv-4636,
    2023 U.S. Dist. LEXIS 74047 (S.D. Ohio Apr. 27, 2023)........................ 35-36, 49

*Iancu v. Brunetti*, 139 S. Ct. 2294 (2019)................................................38, 39

*Jibson v. Mich. Educ. Ass 'n-NEA*, 30 F.3d 723 (6th Cir. 1994)................................27, 32

*Jones v. Potter*, 488 F.3d 397 (6th Cir. 2007)..................................................57

*Josephson v. Ganzel*, 115 F.4th 771 (6th Cir. 2024).........................................44

*Khatri v. Ohio State Univ.*, No. 5:18-cv-2962,
    2020 U.S. Dist. LEXIS 16965 (N.D. Ohio Jan. 17, 2020)................................37, 42

*Kovacs v. Univ. of Toledo*, No. 22-cv-2151,
    2024 U.S. Dist. LEXIS 4820 (N.D. Ohio Jan. 10, 2024).........................................25

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014).........................................50-51

*Leon v. Bensalem Twp. Sch. Dist.*, No. 23-01374,
    2024 U.S. Dist. LEXIS 141688 (E.D. Pa. Aug. 9, 2024).......................................55

*LeVine v. Dejoy*, 64 F.4th 789 (6th Cir. 2023).......................................................32

*Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992).......................................18

*Lucas v. Chance*, 121 F. App'x 77 (6th Cir. 2005).........................................12, 41

*Love-Lane v. Martin*, 355 F.3d 766 (4th Cir. 2004).............................................43

*MacIntosh v. Clous*, 69 F.4th 309, 319 (6th Cir. 2023).........................................47

*Mack v. Holcomb*, 446 F. Supp. 2d 777 (N.D. Ohio 2006)................................43

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................18, 27

*Marquardt v. Carlton*, No. 21-3832,
    2023 U.S. App. LEXIS 2182 (6th Cir. Jan. 25, 2023).......................................40, 42

*Marshall v. Rawlings Co. LLC*, 854 F.3d 368 (6th Cir. 2017).........................................54

*Mbawe v. Ferris State Univ.*, 751 F. App'x 832 (6th Cir. 2018).........................................53

*Maw v. Bd. of Trs. of the Univ. of the D.C.*, 926 F.3d 859 (D.C. Cir. 2019).....................16

*McElhaney v. Williams*, 81 F.4th 550 (6th Cir. 2023).......................................47

*McKeny v. Middleton*, 242 F. Supp. 3d 661 (S.D. Ohio 2017)...................................16, 18

*Meng Huang v. Ohio State Univ.*, 116 F.4th 541 (6th Cir. 2024)........................11, 12, 26

*Meriwether v. Hardtop*, 992 F.3d 492 (6th Cir. 2021)......................................................41

*Middleton v. Lexington-Fayette Cty. Urb. Gov't*, No. 22-6040,
  2024 U.S. App. LEXIS 4056 (6th Cir. Feb. 20, 2024)..........................................31

*Milczak v. Gen. Motors, LLC*, 102 F.4th 772 (6th Cir. 2024)....................................11, 55

*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992).............................................30, 31

*Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 1:23-cv-01932,
  2024 U.S. Dist. LEXIS 146325 (S.D.N.Y. Aug. 16, 2024)..................................55

*Muldrow v. City of St. Louis*, 601 U.S. _(2024).......8, 10, 11, 13, 19, 20, 23, 24, 25, 26, 55

*Myers v. City of Centerville*, 41 F.4th 746, 760-61 (6th Cir. 2022)...........................38, 47

*Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000)....................................55

*Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 306-07 (6th Cir. 2008).....................27, 32

*Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, No. 23-3853,
  2024 U.S. App. LEXIS 20031 (6th Cir. Aug. 9, 2024)..............................................9

*Ohio State Univ. v. Redbubble, Inc.*,
  989 F.3d 435, 443 (6th Cir. 2021)..................................................16, 18, 36, 44, 46

*Parker v. Hankook Tire Mfg. Tenn.*, LP, No. 23-5208,
  2023 U.S. App. LEXIS 34010 (6th Cir. Dec. 21, 2023)..........................................48

*Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*,
  391 U.S. 563 (1968)................................................................................................42

*Reed v. City of Memphis*, 735 F. App'x 192 (6th Cir. 2018).......................................12, 16

*Rice v. Comm'r of Soc. Sec*, 169 F. App'x 452 (6th Cir. 2006)..........................................38

*Rieger v. Giant Eagle* (2019), 157 Ohio St. 3d 512, 138 N.E.3d 1121.............................45

*Rios v. Centerra Group LLC*, 106 F.4th 101 (1st Cir. 2024).............................................55

*Ryan v. Blackwell*, 979 F.3d 519 (6th Cir. 2020)......................................................32, 46

*Ruffin v. Nicely*, 183 F. App'x 505, 512 (6th Cir. 2006).....................................................34

*Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 684 (6th Cir. 2024)......................................26

*Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019)......................................44

*Seay v. Tennessee Valley Authority*, 339 F.3d 454 (6th Cir. 2003)..................................14

*Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418 (6th Cir. 2014)..........................16

*Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012).....................................................48

Sessin v. Thistledown Racetrack, LLC, 187 F. Supp. 3d 869 (N.D. Ohio 2016)...............25

*S.S. v. E. Kentucky Univ.*, 532 F.3d 445 (6th Cir. 2008)....................................................57

*Stewart v. Esper*, 815 F. App'x 8 (6th Cir. 2020)...............................................................22

*Strickland v. City of Detroit*, 995 F.3d 495 (6th Cir. 2021)..............................................28

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..............................................35, 48, 49

*Tennial v. UPS*, 840 F.3d 292 (6th Cir. 2016)...................................................................28

*Talley v. Bravo Pitino Rest.*, 61 F.3d 1241 (6th Cir. 1995)...............................................15

*Taylor v. Buchanan*, 4 F.4th 406 (6th Cir. 2021)..............................................................19

*Taylor v. Geithner*, 703 F.3d 328 (6th Cir. 2013).............................................................15

*Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003)..............................................34

*Thomas v. Project C.U.R.E., Inc.*, No. 3:08-cv-0273,
    2009 U.S. Dist. LEXIS 129195 (S.D. Ohio Apr. 24, 2009).............................35, 49

*Tucker v. Union of Needletrades, Indus., & Textile Emples.*,
    407 F.3d 784 (6th Cir. 2005).................................................................................36

*United States v. Stewart*, 729 F.3d 517 (6th Cir. 2013)....................................................19

*Upshaw v. Ford Motor Co.*, 576 F.3d 576 (6th Cir. 2009).................................................21

*Versaggi v. KLS Martin, L.P.*, No. 21-20547,
    2024 U.S. App. LEXIS 12222 (5th Cir. May 21, 2024)...........................................55

*Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994)..........................................................12

*Weigel v. Baptist Hosp. of E. Tenn.* 302 F.3d, at 382. (6th Cir. 2002).............................15

*Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022)....................................................39

*Wormald v. Overhead Door Corp.*, No. 5:21-cv-00585,
    2022 U.S. Dist. LEXIS 187577 (N.D. Ohio Oct. 13, 2022)....................................54

*Yaros v. State Farm Fire & Cas. Co.*, No. 5:24-cv-01411,
    2024 U.S. Dist. LEXIS 206519 (N.D. Ohio Nov. 13, 2024)...................................45

*Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843 (6th Cir. 2009).....................57

## FEDERAL STATUTES AND REGULATIONS

28 U.S.C. §1291 ......................................................................................... 1

28 U.S.C. §1331 ......................................................................................... 1

29 U.S.C. §794 ....................................................................................... 1, 2, 10

42 U.S.C. §1983 ........................................................................................ 1

42 U.S.C. §2102(1)(A) ............................................................................53, 55

42 U.S.C. §2000e ............................................................................... 1, 2, 14, 50

## CIVIL RULES

Rule 8(a)34 .............................................................................................. 6

Rule 12(b)(6) ......................................................................................... 34

Rule 30(b)(6) ......................................................................................... 6

Rule 56 ........................................................................................... 2, 10, 11

## III.    STATEMENT OF JURISDICTION

On November 14, 2022, Dr. Patterson initiated the civil action below against Defendant-Appellees, Kent State University ("KSU"), Mandy Munro-Stasiuk, and Julie M. Mazzei, in Case No. 5:22-cv-2052, originating in the U.S. District Court for the Northern District of Ohio, Hon. JOHN R. ADAMS, Presiding Judge. [COMPLAINT, R.1]. The subject matter jurisdiction of the District Court arose under 28 U.S.C. §1331 from the federal questions alleged in the Complaint. [*Id*.]. On September 30, 2024, the District Court entered summary judgment in Defendants' favor in all respects, [MEMO. OPINION AND ORDER, R.100], and a "final" JUDGMENT ENTRY terminating the action. [R.101]. Dr. Patterson filed their NOTICE OF APPEAL on October 28, 2024. [R.103]. They, therefore, appeal from a "final" order below, which the Court of Appeals has jurisdiction to review under 28 U.S.C. §1291. *Hale v. Boyle Cnty.*, 18 F.4th 845, 851 (6th Cir. 2021).

## IV.    STATEMENT OF THE ISSUES

Whether the District Court committed reversible erred by:

1.    Failing to construe the evidence on summary judgment as a whole in Dr. Patterson's favor and draw all reasonable inferences in their favor;

2.    Failing to apply the correct legal standard to the "adverse action" element of Dr. Patterson's claim against KSU arising under Title VII, 42 U.S.C.

§2000e, *et seq.* ("Title VII") for discrimination based on sex/gender in light of the unanimous holding in *Muldrow v. City of St. Louis*, 691 U.S. 346 (2004);

3.    Granting summary judgment in KSU's favor for Title VII gender discrimination;

4.    Disregarding Dr. Patterson's claim against Dean Munro-Stasiuk for First Amendment retaliation arising under 42 U.S.C. §1983 ("Section 1983);

5.    Failing to apply the correct legal standard to the "adverse action" element of Dr. Patterson's claim for First Amendment retaliation, generally and in light of *Muldrow*;

6.    Failing to grant summary judgment in Dr. Patterson's favor on their claim for First Amendment retaliation despite there being no genuine dispute of material fact that Dean Munro-Stasiuk retaliated against them because of the content of their constitutionally protected speech ***and*** granting summary judgment in the Dean's favor;

7.    Disregarding Dr. Patterson's claim against KSU for Title VII retaliation *in toto* and granting summary judgment in KSU's favor;

8.    Applying the incorrect legal standard to the "adverse action" element of Dr. Patterson's claim against KSU for "regarded as" disability discrimination arising under Section 504 of the Rehabilitation Act, 28 U.S.C. §794 ("Section 504), and granting summary judgment in KSU's favor.

## V.    STATEMENT OF THE CASE

### A.    Statement of facts.

Dr. Patterson is an openly transexual person and uses "they" / "them" pronouns.  KSU is a public university with a flagship campus in Kent, Ohio, and several regional campuses throughout Northeast Ohio.  [KSU MSJ, R.70-1, at PageID #4352].  In 2013, Dr. Patterson earned their Ph.D. in English from Miami University with subdisciplines in rhetoric and composition and a teaching certificate in women's, gender, and sexuality studies.  [PATTERSON DEPO., R.57, at PageID ##1462-63].  Since the fall of 2018, Dr. Patterson has been employed by KSU at its "regional" Tuscarawas Campus and was promoted to Associate Professor of English in 2021.  [R.70-1., at PageID ##4352-54].   Dr. Patterson is the only openly transgender faculty member at KSU.  [PATTERSON DEPO., R.56, at PageID ##949-951, 1176, and 1194-1195].

In March 2021, Dr. Patterson contacted the Dean of KSU's School of Arts and Sciences ("CAS"), Appellee Mandy Munro-Stasiuk [MUNRO-STASIUK DEPO., R.72, PageID #4420], to express interest in working with the Center for the Study of Gender and Sexuality ("the Center"), upon which she offered to accommodate Dr. Patterson's desire to work on the Center and a new gender studies major, with a credit load reallocation beginning in the 2021 semester ("the Load Lift").  [MUNRO-STASIUK DEC., R.69, at ¶¶14, 20-22].

The Load Lift is "a reallocation of credit hours to minimize hours for teaching and devote some [of] those hours to an aspect of university service." [PATTERSON DEPO., R.56, at PageID #1054]. It involved "buying out" half of Dr. Patterson's teaching time at the regional Tuscarawas campus "to work with the current Women's Studies and LGBTQ Studies faculty to start building out the degree proposal" on the main Kent Campus. ["**Exhibit G**," R.69, at PageID #4428].

At that time, the Center was transitioning *from* the departure of its founding director, Dr. Molly Merryman [PATTERSON DEPO., R.56, at PageID #1021], and *to* KSU's new School of Multidisciplinary Social Sciences and Humanities ("the School"), which was to be led by Appellee Julie Mazzei. [MAZZEI DEC., R.68, at ¶4]. In November 2020, Dr. Merryman informed Dr. Patterson that she'd recommended them to the Dean as her replacement. [R.56, at PageID ##1018-20]. In January 2021, Dr. Merryman informed Dr. Patterson that she'd also recommended them to serve on the Steering Committee for programs within the Center. [PATTERSON DEC., R.74, at ¶5].

On March 11, 2021, Dr. Patterson met with Dean Munro-Stasiuk to "get the ball rolling" on integrating a proposed Women's and Gender Studies Program ("WGS Program") into the Center. [PATTERSON DEPO., R.57, at PageID #1472]. Per Dr. Patterson's contemporaneously kept notes, the two discussed that Dr. Patterson would lead the Center by "bringing together a team to build out the new

WGS Program" and "putting together all elements of the proposal as well as developing proposals for new courses." [*Id*., at PageID ##1477-78]; and [PATTERSON NOTES, R.57-5, at PageID #1576].

Dean Munro-Stasiuk says that in June 2021, she became aware of "alarming" anonymous tweets attributed to Dr. Patterson. [MUNRO-STASIUK DEPO., R.73, at PageID #4837]. She says she was "alarmed" because she believed the anonymous tweets criticized Dr. Mazzei and perhaps her as persons in authority and because she believes them to be inaccurate. [*Id*., R.72, at PageID ##4590-4591]. Dr. Patterson's Tweets were anonymous by design. [PATTERSON DEPO., R.56, at PageID ##954 and 1166]. As the only "out" transgender faculty member at KSU, they have no "teacher's lounge" dedicated to addressing issues that directly affect their employment as a transgender person and no one to talk to at all at KSU. [*Id*, at PageID #1165]. Dean Munro-Stasiuk agrees that Dr. Patterson never identified her, Dr. Mazzei, KSU, or anyone associated with KSU in their tweets. [R.72, at PageID ##4593-97].

On July 9, 2021, Dr. Mazzei met with Dee Warren and Professor Suzanne Holt in her office. [MAZZEI DEPO., R.64, at PageID ##3184-3185]. Dr. Holt allegedly expressed "concerns" about Dr. Patterson's "mental stability." [*Id*., at PageID ##3193, 3199-3200, and 3237]. For Dr. Mazzei, this was the "pivot point" at which she decided that collaboration with Dr. Patterson was a bad idea. [*Id*., at

PageID ##3237-38]. She and Dee Warren immediately raced to get ahold of the Dean to tell her the news and found her "maybe" "15 or 30 minutes later." [MUNRO-STASIUK DEPO., R.72, at PageID #4570].

On July 19, 2021, Dean Munro-Stasiuk acted on the information supplied to her by Dr. Mazzei and Dee Warren by rescinding Dr. Patterson's Load Lift via email. [MUNRO-STASIUK DEPO., R.72, at PageID #4575] and [RESCISSION EMAIL, R.72-14, at PageID #4676]. But not before running the decision by Associate Provost Kevin West, Tuscarawas Campus Dean Brad Bielski, Dr. Mazzei, then-Vice President of DEI Amoba Gooden, and then-Grievance Chair of the American Association of University Professors ("AAUP"), Theresa Walton-Fisette on July 15, 2021. [JULY 15, 2021 EMAIL, R.72-13 at PageID #4674].

Parallel to the goings on in the Center, the Dean recommended that Dr. Paterson initiate the process to "transfer" their tenure from the Tuscarawas campus to the new School on the Kent Campus. [KSU MSJ, R.70-1, at PageID #5354]. This process is governed by University Policy 6-14(N) ("Policy 6-14(N)"). [CLEWELL 30(B)(6) DEPO., R.65, at Page ID #3676], and "**Exhibit 50.**" [POLICY 6-14(N), R.65-1]. Policy 6-14(N) requires (1) that a Faculty Advisory Committee ("FAC") vote on the "acceptability" of the transfer, [R.65-1]; and (2) a Reappointment, Tenure, and Promotion ("RTP") Committee evaluate "the professional credentials of the

6

incoming faculty member" solely by reviewing the applicant's "**scholarship**," "**teaching**," and "**service**" to the University, only.  [*Id.*, at PageID #3839].

The Committees first voted on Dr. Patterson's tenure transfer request on September 24, 2021. [CLEWELL 30(B)(6) DEPO., R.65, at PageID ##3631-32].  Dr. Robert Trogdon voted in favor of Dr. Patterson's application.  [*Id.*, at PageID ##3639-49]. He's been employed by KSU as a full Professor in the English Department since the fall of 2010.  [TROGDON DEPO., R.61, at PageID ##1982-83]. Between 2012 and 2020, he served as the Chair of the English Department.  [*Id.*, at PageID #1991].  In that span, he presided over four applications for tenure requests from regional campuses to the Kent Campus: those of Drs. Lieske, Hediger, Roman, and Cunningham.  [*Id.*, at PageID #2001].

Both Committees voted to deny Dr. Paterson's transfer request on September 1, 2021, [CLEWELL 30(B)(6) Depo., R.65, at PageID #3632], after which Dr. Trogdon became "troubled" because they didn't follow the criteria stated in Policy 6-14(N), as they'd done every other time.  [TROGDON DEPO., R.61, at PageID ##2115-17]. Dean Munro-Stasiuk later instructed the Committees to "do it again" to correct "breaches of policy in the way that RTP and FAC conducted itself at the September 24th meeting."  [R.65, at PageID #3642].  The Committees reconvened on October 1, 2021, [*Id.*, at Page #3631], and again denied Dr. Patterson's tenure transfer request. [*Id.*, at PageID #3658].

**B.    Relevant procedural history.**

On January 18, 2024, the District Court granted Dr. Patterson leave to file their Second Amended Complaint to allege claims against KSU for discrimination based on perceived disability in violation of Section 504, [SECOND AMENDED COMPLAINT, R.37-1, at PageID ##738-39], and First Amendment retaliation against the Dean and Dr. Mazzei.  [*Id.*, at PageID ##739-41].

On February 29, 2024, KSU moved for summary judgment of Counts I (Title VII discrimination) and IV (Section 504 discrimination) of the Second Amended Complaint.  [KSU MSJ, R.70].  Dean Munro-Stasiuk did the same on Count V for First Amendment retaliation.  [MUNRO-STASIUK MSJ, R.71].  Dr. Patterson likewise moved for partial summary judgment against KSU on Count IV and Dean Munro-Stasiuk on Count V.  [PATTERSON PARTIAL MSJ, R.75].

On April 17, 2024, in the middle of the parties' summary judgment briefing, in *Muldrow*, the Supreme Court repealed the former "materially adverse" standard (and all heightened pleading standards) formerly applied in this Circuit to the "adverse action" element of Dr. Patterson's Title VII discrimination claim.  On May 2, 2024, Dr. Patterson moved to strike/disregard Dean Munro-Stasiuk's 21-page Declaration [R.69], [MOTION TO STRIKE, R.90], which she opposed on May 10, 2024.  [R.94].  Dr. Patterson filed their Reply on May 17, 2024.  [R.96].

On August 9, 2024, this Court held that in *Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, No. 23-3853, 2024 U.S. App. LEXIS 20031 (6th Cir. Aug. 9, 2024), that a public employer can't plausibly claim to be "disrupted" by an offensive meme posted online by an employee, while the employee was off the clock, and neither the public nor the employer's patrons saw the meme. On August 15, 2024, Dr. Patterson moved for leave to supplement their summary judgment papers to cite *Noble* in support of their First Amendment arguments, [R.97], which the parties fully briefed.

### C.    Rulings presented for review

Dr. Patterson appeals from the District Court's September 30, 2024, OPINION AND ORDER, resolving (i) KSU's Motion for Summary Judgment [R.70], (ii) Dean Munro-Stasiuk's Motion for Summary Judgment [R.71], and Dr. Patterson's Motions (iv) for Partial Summary Judgment [R.75], (v) to Strike or Disregard Dean Munro-Stasiuk's Declaration [R.90], and for Leave to Cite Supplemental Authority. [R.97]. The District Court granted Defendants' Motions for Summary Judgment in all respects, denied Dr. Patterson's Motion for Summary Judgment, dispatched Dr. Patterson's post-summary judgment motions as moot [OPINION AND ORDER, R.100, at PageID #5664], and dismissed the civil action in its entirety. [JUDGMENT ENTRY, R.101].

## VI.   SUMMARY OF THE ARGUMENT

The District Court consistently erred below by failing to construe all evidence in Dr. Patterson's favor and drawing all reasonable inferences in their favor rather than resolving genuinely disputed material facts against them.  In particular, and without limitation, the District Court resolved genuine questions of material fact as to whether Dr. Patterson demonstrated that KSU and the Dean took "adverse actions" against them.  Along these lines, the District Court erred by failing to apply the correct "some harm" standard articulated in *Muldrow* because the text of Title VII requires no heightened standard of harm to demonstrate the "adverse action" element in discrimination cases.

This Court should also extend the "some harm" standard to Dr. Patterson's claim for Section 504 disability discrimination because the ADA/Section 504 anti-discrimination language parallels Title VII.  Other federal courts have already done so, but this appears to be an issue of first impression in the Sixth Circuit.

Given this Court's application of a ***less onerous*** burden of establishing adverse action in ***retaliation*** claims than discrimination claims, it also appears well-positioned to at least confirm the application of the "some harm" standard in Title VII retaliation claims.  *See*, *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (The burden of establishing an adverse employment action is "less onerous in

10

the retaliation context than in the anti-discrimination context.")  This would only be a logical extension of existing law.

The Court should also apply the holding in *Noble* to Dt. Patterson's First Amendment retaliation claim because there's no suggestion whatsoever that any member of the public or KSU patrons complained about or was even aware of Dr. Patterson's tweets.  This stands to reason, given their anonymity.  Thus, it's impossible for KSU to make any showing of "disruption" that would come close to trumping Dr. Patterson's right to be free from retaliation for speaking out against illegal discrimination, for which they have a clearly defined constitutional right.

Aside from the District Court's failure to apply the correct substantive law, it erred by disregarding wholesale (a) the first denial of Dr. Patterson's tenure transfer request on September 24, 2021, [OPINION AND ORDER, R.100, at PageID #5652]; (b) most of the facts gleaned in discovery supporting their First Amendment retaliation claim, [*Id*., at ##5659-64]; and (c) ***all*** of Dr. Patterson's Title VII retaliation claim. [*Id*., at PageID ##5645-46].

## VII.  ARGUMENT

### A.    Standard of review.

This Court reviews *de novo* the District Court's grant of summary judgment below.  *Meng Huang v. Ohio State Univ.*, 116 F.4th 541, 555 (6th Cir. 2024) (citing *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 782 (6th Cir. 2024)).  Under Rule 56(a),

summary judgment is appropriate if "there is no genuine dispute as to any material fact" and, therefore, one or more defendants "is entitled to judgment as a matter of law."  Defendants *aren't* entitled to summary judgment if there is evidence in the record "on which the jury could reasonably find for [Dr. Patterson]."  *Meng Huang,* 116 F.4th, at 555 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).  The role of this Court isn't to make "[c]redibility determinations" or "weigh[]" the evidence."  *Id.*  (citing *Anderson*, 477 U.S., at 255).  Rather, it must "view the record evidence in the light most favorable to [Dr. Patterson] and draw all reasonable inferences in [their] favor."  *Id.* (citing *Milczak*, 102 F.4th at 782).

Further, it's "well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).  For example, "[t]he Court should not consider conclusory statements or statements made without personal knowledge."  *Id.*, at 225-26.  It's also "well-established" "that otherwise inadmissible hearsay evidence may not be used to support or oppose a motion for summary judgment."  *Lucas v. Chance*, 121 F. App'x 77, 79 (6th Cir. 2005).

"Sham" evidence should also be disregarded on summary judgment when a witness' later declaration testimony conflicts with their earlier deposition testimony.  *Reed v. City of Memphis*, 735 F. App'x 192, 198 (6th Cir. 2018).  Similarly, "[s]elf-contradiction by the moving party's witnesses may, of course, create a genuine issue

of material fact *precluding* summary judgment" (emphasis supplied). *Id.* Conflicting testimony raises credibility issues that, as a matter of law, ***can't*** be resolved on summary judgment. *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) (citing *Liberty Lobby*, 477 U.S., at 255).

### B. *Muldrow* repealed the "materially adverse" standard for analyzing the "adverse action" element of Title VII discrimination claims.

Dr. Patterson's claims below share several common mandatory elements, including, without limitation, showing one or more "adverse actions" to survive summary judgment on each. To this end, Dr. Patterson argued that the following four distinct but related actions by Defendants were "materially adverse" employment actions by **(i)** denying their Tenure Transfer Request on September 24, 2021, and **(ii)** again on October 1, 2021 [PATTERSON OPPOSITION TO MSJ, R.85-1, at PageID ##5386-91, 5392-97]; **(iii)** rescinding the Load Lift on or about July 19, 2021, [*Id*., at PageID ##5398-5400]; and **(iv)** revoking their Leadership Role in the Center. [*Id*., at PageID ##5400-01].

In *Muldrow*, the Supreme Court interpreted the text of Title VII (to "discriminate against" an employee in the "terms" or "conditions" of employment) "as requiring an employee to prove only that a challenged action caused the employee '***some harm*** respecting an identifiable term or condition of employment'" (emphasis supplied). *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 885 (6th Cir. 2024) (citing *Muldrow*, 601 U.S., at 974). "The Court added that an action can

13

violate Title VII even if it does not cause a '***significant'*** injury to the employee" (emphasis in the original).  *Id.* (citing *Muldrow*, 601 U.S., at 974).

The unanimity in *Muldrow* was driven by a purely textual analysis of Title VII.  "[T]o discriminate against" simply means to treat worse – in this case, based on sex.  *Muldrow*, 601 U.S., at 355 (citing *Bostock v. Clayton Cty.*, 590 U.S. 644, 657-58 (2020)).  "To demand 'significance' is to add words—and significant words, as it were—to the statute Congress enacted."  *Id.*  In short, Title VII "flatly 'prevent[s] injury to individuals based on' status, without distinguishing between significant and less significant harms." *Id.*, at 358.  Thus, courts shall not "add words to the law" "to achieve what some employers might think 'a desirable result.'"  *Id.* (citing *EEOC* v. *Abercrombie & Fitch Stores, Inc.*, 575 U. S. 768, 774 (2015)).

This Court has since expanded the scope of actionable claims under Title VII, holding that "[d]iscrimination is itself a harm."  *Doe v. Univ. of Ky.*, 111 F.4th 705, 724 (6th Cir. 2024) (citing *Muldrow*, 601 U.S., at 365) (KAVANAUGH, J., concurring)).  Indeed, Justice Kavanaugh says that the Majority didn't go far enough in its textual analysis:

> [T]he text of Title VII does not require a separate showing of some harm. The discrimination is harm. The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment.

*Muldrow*, 601 U.S., at 365.  "The plain text of Title VII requires no more."  *Id.*, at 364.

14

**C.**    **Summary judgment must be reversed on Dr. Patterson's Title VII gender discrimination claim because the District Court applied the incorrect legal standard.**

42 U.S.C. §2000e-2(a)(1) makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's [sex]."  To establish Title VII discrimination, Dr. Patterson must either provide ***direct*** evidence of discrimination ***or*** establish a *prima faci*e case, which creates an inference of ***indirect*** discrimination based on circumstantial evidence. *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003).

**1.**    **Dr. Patterson showed "direct" evidence of discrimination in the denial of their tenure transfer request.**

Dr. Patterson first argued below that KSU's refusal to transfer their tenure to the Kent Campus constituted a "hiring" decision and **direct evidence** of discrimination.  [PATTERSON MSJ OPPOSITION, R.85-1, at PageID ##5386-91].  They argued that KSU directly discriminated against them by denying their Tenure Transfer Request on **(i)** September 24, 2021, and **(ii)** again on October 1, 2021, during the "do-over" vote, i.e., refusing to "hire" them.  [*Id.*, at PageID ##5386-91].  Refusal to hire is a "materially adverse" employment decision.  *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013).

Dr. Patterson may make their *prima facie* case of discrimination on direct evidence by presenting direct evidence of intentional discrimination. *Talley v. Bravo*

*Pitino Rest.*, 61 F.3d 1241, 1248 (6th Cir. 1995). Under both the "direct" and "indirect" approaches, Dr. Patterson must demonstrate that they suffered an "adverse employment action" as a result of the discrimination based on "sex." *Crane v. Mary Free Bed Rehab. Hosp.*, 634 Fed. Appx. 518, 522 (6th Cir. 2015). They must also "prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 382 (6th Cir. 2002).

Decisions affecting tenure at KSU are subject to the same Title VII analysis as any other employment decision. *Denman v. Youngstown State Univ.*, No. 4:05-cv-1910, 2007 U.S. Dist. LEXIS 70090, at *4 (N.D. Ohio Sept. 21, 2007) (citation omitted). In this context, "the line between coworker and supervisor is significantly blurred, … and even a few colleagues can wield dispositive influence over a plaintiff's academic future," *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 n.4 (6th Cir. 2014), and often involve "complex judgments and numerous decision-makers." *Maw v. Bd. of Trs. of the Univ. of the D.C.*, 926 F.3d 859, 865 (D.C. Cir. 2019).

First, KSU didn't identify any reason for its September 24 decision to refuse Dr. Patterson's tenure transfer request because, as Professor Clewell claims, "KSU did not deny the -- a tenure request on September 24th," and admitted there was no

factual basis for its actions.  [CLEWELL DEPO., R.65, at PageID ##3631, and 3633-34].

"Initial" negative decisions affecting tenure can constitute distinct adverse actions.  *McKeny v. Middleton*, 242 F. Supp. 3d 661, 670 (S.D. Ohio 2017) (citation omitted).  KSU, therefore, waived the argument and can't raise it for the first time on appeal.  *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 443 (6th Cir. 2021).  Second, even if the argument isn't waived, Dr. M'Baye disputes that KSU didn't deny Dr. Patterson's request on September 24, 2021.  [M'BAYE DEC., R.66, at PageID #3889].  This contradiction among KSU's witnesses below must be construed in Dr. Patterson's favor.  *Reed*, 735 F. App'x, at 198.

Third, During the RTP Committee's discussion of Dr. Patterson's expertise in transgender studies, Decision-maker Dr. Dunmire "expressed a concern that those courses were not part of the [LRSP] Program" because their "area of expertise was not … what the program might need in terms of **hiring**" (emphasis supplied).  [CLEWELL DEPO, R.65, at PageID ##3614-15].[1]  LGBTQ+ courses also weren't on the Dean's "wish list" as to where hires would be needed.  [*Id.*, at PageID #3616].  Decision-maker Dr. Bracher also "said that there were cases in the past where faculty with absolutely stellar publication records did not get **hired** in the English

---

[1]    "LRSP" stands for KSU's Literacy, Rhetoric, and Social Practice Program.  [CLEWELL DEPO., R.65, at PageID #3614].

department," but without anything more (emphasis supplied). [*Id.*, at PageID ##3667, and 3671].

In other words, there's, at worst, a genuine question of material fact that RTP Committee decision-makers explicitly made ***hiring*** decisions based on Dr. Patterson's status as a transgender scholar and decided that they weren't "needed" on the Kent Campus. This decision was based exclusively on the perception of the voting members that Dr. Patterson's sole background was in LGBTQ studies, with no other areas of expertise. [CLEWELL DEPO., R.65, at PageID ##3616-18].

The decision-makers made this decision despite (i) Dr. Patterson's coursework already falling under the LRSP umbrella [TROGDON DEPO., R.61, at PageID #2037], and (ii) the RPT Committee not discussing Dr. Patterson's "scholarship" within the LRSP Program. [*Id.*, at PageID ##2094-93]. These comments were made in the "veiled" context of whether or not Dr. Patterson "fit" into the LRSP Program. [*Id*, at PageID ##2092-98].

There was also no good reason to rely on Dr. Patterson's alleged "fitness" with the LRSP Program [TROGDON DEPO, R.61, at PageID ##2106-07] because "fit" and "collegiality" have anything to do with ***any*** applicant's scholarship, research, teaching, or service. [*Id.*, at PageID ##2095-98]. They aren't "valid" concerns and don't implicate the only relevant criteria of scholarship, teaching, or service. [*Id.*, at PageID #2127].

The failure of KSU's decision-makers to get their stories straight about what happened on September 24, 2021, raises issues of credibility that can't be resolved on summary judgment, *Dawson*, 528 F. App'x, at 452, and "must be viewed in the light most favorable to" Dr. Patterson. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Even if this Court accepts KSU's description of the negative outcome of the September 24, 2021, vote as "pending," that outcome was still a "materially adverse action" because it was inherently "connected to" and "implied" the outcome of the October 1, 2021, vote. *McKeny*, 242 F. Supp. 3d, at 672 (citing *Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) (when the first adverse action is connected to and implies the second, a single discriminatory decision is taken)).

### 2. Dr. Patterson also demonstrated "indirect" evidence of discrimination.

KSU discriminated against Dr. Patterson based on circumstantial evidence on the same grounds addressed above on direct evidence by **(iii)** rescinding the Load Lift on or about July 19, 2021, and **(iv)** revoking their Leadership Role in the Center. [PATTERSON MSJ OPPOSITION, R.85-1, at PageID ##5398-5401]. To make their *prima facie* showing, Dr. Patterson must show: **(a)** that they are a member of a protected group; **(b)** that they were qualified for their job; **(c)** that they suffered an "adverse employment action"; and **(d)** that the circumstances of the adverse action

"give rise to an inference of unlawful discrimination." *Hunter v. Gen. Motors LLC*, 807 F. App'x 540, 544 (6th Cir. 2020).

KSU didn't challenge **elements (a)** or **(b)** and therefore waived them. *Redbubble,* 989 F.3d, at 443. There's, therefore, no genuine dispute of material fact that as a transgender person, Dr. Patterson is a qualified member of a group of employees protected from discrimination.

### 3. The District Court erred by failing to apply the "some harm" standard articulated in *Muldrow*.

In granting summary judgment below, the District Court only analyzed **element (c)**, the "adverse action element. It did so erroneously by applying the former "materially adverse" standard to each of the four adverse actions alleged by Dr. Patterson:

> An adverse employment action is a "***materially adverse*** change in the terms and conditions of [plaintiff's] employment" …. A ***materially adverse*** change is "typically characterized 'by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished ***material responsibilities***, or other indices that might be unique to a particular situation." …. *De minimis* employment actions are not ***materially adverse*** and therefore not actionable (emphasis supplied).

[OPINION AND ORDER, Doc.100, at PageID ##5646-47].

This was a reversible error because lower courts are obliged to follow Supreme Court precedent "unless and until it has been overruled by the Court itself."

*Taylor v. Buchanan*, 4 F.4th 406, 408 (6th Cir. 2021). Although the parties partially briefed this case before *Muldrow* was decided, this Court "**must apply** the law in effect at the time it renders its decision" (emphasis supplied). *United States v. Stewart*, 729 F.3d 517, 523 (6th Cir. 2013) (citing *Henderson v. United States*, 133 S. Ct. 1121, 1126 (2013)).

Under Muldrow, Dr. Patterson needn't show that any injury was "significant," "serious," "substantial," "or any similar adjective suggesting that the disadvantage" must exceed a "heightened bar" because "Title VII's text nowhere establishes that high bar." *Muldrow*, 601 U.S., at 350-55. Irrespective of *Muldrow*, each of the "adverse actions" alleged by Dr. Patterson satisfies the "some harm" standard.

### Revocation of Dr. Patterson's Load Lift:

Dr. Patterson's tenure transfer would have been an "advancement" of their career and a "promotion." When tenured faculty like Dr. Patterson apply to transfer their tenure from a regional campus to the Kent Campus, it's for a "different position." [MUNRO-STASIUK DEPO., 72, at PageID ##4456-57]. This Court should, therefore, analyze the same as a "failure to promote." *Freeman v. Potter*, 200 F. App'x 439, 443 (6th Cir. 2006) (citations omitted). On its own, "[f]ailing to promote a qualified individual because [they are] a member of a protected class can be an adverse employment action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009).

Dr. Patterson argued below that the Dean's recission of the Load Lift was a "demotion" or "failure to promote" because they would have "diminished responsibilities" as a result.  [PATTERSON OPPOSITION TO MSJ, Doc. 85-1, at PageID ##5398-5400].  Dr. Patterson's expert, Jennifer Wingard, Ph.D., opined that such "separate pools" among tenured faculty "can lead to pay inequity between those who teach at the regional campuses versus those who teach at [the Kent Campus]."  [WINGARD DEPO, R.63, at PageID #2748].[2]

Dean Munro-Stasiuk is aware of the pay disparity identified by Dr. Wingard.  [MUNRO-STASIUK DEPO., R.72, at PageID ##4448-49].  This is so because regional deans are empowered to only offer lower starting salaries than the deans on the Kent Campus.  [Id., at PageID ##4450-55].  "Most faculty," however, "are offered salaries above the [regional campus] floor" on the Kent Campus.  [Id.].  She's also aware that regional campus faculty aren't compensated for serving on dissertation committees, unlike Kent faculty.  [Id., at PageID ##4473-74].

---

[2]    Dr. Wingard has been a tenured associate professor in the University of Houston English Department since 2014.  [WINGARD REPORT, R.33-1, at PageID #277].  She's been faculty member of Houston's WGS program since 2008.  [Id.].  Her extensive qualifications are detailed in her Report [Id., at PageID #269], and were established during her deposition.  Through her scholarship and administrative work within university systems, Dr. Wingard has "developed an understanding of university budgets, structures, and labor challenges[.]"  [She's been extensively "published and taught seminars on academic labor and the corporatization of higher education."  [WINGARD DEPO., R.63, at PageID ##2744-46].

Dr. Wingard also opined that "[b]ecause Dr. Patterson works on a regional campus, they [] have a higher yearly teaching load than they would have if assigned to the Kent Campus" [WINGARD REPORT, R.33-1, at PageID #272], thus impeding Dr. Patterson's "career advancement opportunities." [*Id*., at PageID #269]. Such adverse actions "may consist of a less distinguished title, ***diminished options for advancement***, or other unique indices" (emphasis supplied). *Stewart v. Esper*, 815 F. App'x 8, 17 (6th Cir. 2020).

"[W]hen you move from tenured associate to full," you gain "a national or international reputation and to work with graduate students and to publish in national and international venues, as well as the speaking engagements." [WINGARD DEPO., R.63, at PageID ##2767-68]. Speaking engagements arising from regional campus appointments don't have the same gravitas as engagements arising from appointments on "main" campuses like the Kent Campus and "do not necessarily build a national or international reputation as an academic." [*Id*., at PageID #2768].

Similarly, publishing opportunities are critical to any tenured academic's career. [R.63, at PageID #2756 and 2767-68]. Along with more publishing opportunities come more opportunities to speak at academic and professional conferences and events. [PATTERSON DEPO., R.57, at PageID ##432-33]. Dr. Mazzei agrees. She emphasized the "heavy emphasis" institutions place on "research" for academics to be promoted to full professor. [MAZZEI DEPO., R.64, at

23

PageID##3130-43]. "Research" accounts for **80%** of that consideration; "teaching" is **12%**; "the rest" - **8%** - is service." [*Id.*, at PageID ##3127-28].

Upon erroneously applying the "materially adverse action" standard, however, the District Court concluded that Dr. Patterson's "subjective desire to reallocate some of their time from teaching to service does not mandate a finding that the denial was an adverse action." [OPINION AND ORDER, R.100, at PageID #5649]. This conclusion first ignores Dr. Mazzei's acknowledgment to the contrary. Second, standards looking for "objectively tangible harm" are just as improper as applying the former "material adversity" standard. *Muldrow*, 601 U.S., 353 n.1. This stands to reason because the phrase "objectively tangible harm" is also not found in the text of Title VII.[3]

### Revocation of
### Dr. Patterson's Leadership Role in the Center:

Dr. Patterson argued that the diminishment of their reputation and professional prestige resulting from the loss of their appointment to the Center was

---

[3]     *See e.g.*, *Bonaffini v. City Univ. of N.Y.*, No. 20-cv-5118, 2024 U.S. Dist. LEXIS 174846 (E.D.N.Y. Sep. 25, 2024) (citing *Dixon v. Blinken*, No. 22-cv-2357, 2024 U.S. Dist. LEXIS 163267 (D.D.C. Sept. 11, 2024) (denying summary judgment with respect to "subjectivity" in light of *Muldrow*, reasoning that the Second Circuit would likely adopt the same approach because "nothing in Title VII … distinguishes between significant disadvantages and not-so-significant ones")).

"materially adverse" under Title VII. [PATTERSON OPPOSITION TO MSJs, R.85-1, at PageID ##5400-01]. The District Court disagreed because "prestige" in its estimation is "in the eye of the beholder," "subjective," and didn't result in a change to Dr. Patterson's compensation, salary, benefits, rank, or title. [OPINION AND ORDER, R.100, at PageID #5649-50].

By so holding, the District Court erred by applying the incorrect standard. Again, irrespective of *Muldrow*, being deprived of an important leadership or supervisory role is "materially adverse," particularly if, as here, that loss comes with diminished responsibilities. *Sessin*, 187 F. Supp. 3d, at 875-77.[4]

*Muldrow* rejected the District Court's approach ***because*** "prestige" is in the eye of the beholder. *Muldrow*, 601 U.S., at 355. "[T]he answers [to whether the harm is significant] can lie in the eye of the beholder—and can disregard varied kinds of disadvantage." *Id.,* at 355-56. In this light, Dr. Patterson's allegations

---

[4]     *See also*, *Carroll v. Gates*, No. 2:09-cv-385, 2010 U.S. Dist. LEXIS 118539 (S.D. Ohio Nov. 8, 2010) (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (even if an employee's pay weren't lowered, a reasonable jury could conclude that the total loss of ***supervisory responsibility*** could indicate a significant diminution of responsibility and prestige, thereby constituting an adverse employment action); *Broach v.City of Cincinnati*, No. 1:12-cv-66, 2013 U.S. Dist. LEXIS 97643 (S.D. Ohio July 12, 2013) (***suspension*** of supervisory duties may be considered to be materially adverse); and *Kovacs v. Univ. of Toledo*, No. 22-cv-2151, 2024 U.S. Dist. LEXIS 4820 (N.D. Ohio Jan. 10, 2024) (when an employer determines that a plaintiff "was not leadership material," and "demoted her to a non-supervisory role," such was "materially adverse").

easily "meet [the 'some harm'] test with room to spare," particularly where they were awarded a prestigious leadership position only to have it revoked and relegated to mere "participation" in the Center in which they would be "*less involved* in high-visibility matters and primarily [performing] administrative work" (emphasis supplied). *Muldrow*, 601 U.S., at 355.

Just as Dr. Patterson did below, [PATTERSON DEPO., R.56, at PageID #1004-06], the plaintiff in *Muldrow* "set out her view of what the transfer had cost her" – being moved out of a "*premier position*" into a "*less "prestigious"*" and more "*administrative*" role, with "fewer opportunities" to work on important matters. *Muldrow*, 601 U.S., at 351-52. Likewise, the denial of Dr. Patterson's appointment to a leadership position need only have left them "worse off, *but need not* have left [them] significantly so." *Id.*, at 359.

### KSU's Denials of
### Dr. Patterson's Tenure Transfer Request:

The District Court next erred by artificially limiting its consideration of the facts of Dr. Patterson's Title VII discrimination claim by disregarding the September 24, 2021, vote and looking only to the ultimate decision on October 1, 2021, holding that "[w]hile [the facts occurring on September 24, 2021,] are certainly *relevant* to a discrimination argument, they are not *necessary* to determine whether the ultimate decision, … resulted in an adverse employment action" (emphasis supplied). [OPINION AND ORDER, R.100, at PageID #5651-63].

Defendants below, however, simply aren't entitled to summary judgment if there is *any* evidence in the record "on which the jury could reasonably find for [Dr. Patterson]." *Meng Huang*, 116 F.4th, at 555 (citing *Liberty Lobby*, 477 U.S., at 252). By arbitrarily deciding what evidence is "necessary" to the success of Dr. Patterson's Title VII discrimination claim, the District Court erroneously took "relevant" questions of fact out of the jury's hands. "Actions that may not, on their own, constitute Title VII discrimination may nonetheless contribute to a jury's evaluation of the overall environment in which the plaintiff worked." *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 684 (6th Cir. 2024) (citations omitted).

To this end, "we only grant summary judgment '[w]here the record taken *as a whole*' could not lead a rational trier of fact to find for the non-moving party" (emphasis supplied). *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011) (citing *Matsushita*, 475 U.S., at 587-88. *See also*, *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 306-07 (6th Cir. 2008) (reversing summary judgment based on evidence in record that the district court did not consider); and *Jibson v. Mich. Educ. Ass 'n-NEA*, 30 F.3d 723, 729 (6th Cir. 1994) (this Court reviews a district court's grant of summary judgment based on a *de novo* review of the evidence in the *entire record*).

**4.    Dr. Patterson identified a genuine dispute of material fact, suggesting that KSU treated *two sets* of non-protected employees more favorably than them.**

The District Court didn't analyze **element (d)**, the "inference of unlawful discrimination" element.  As they did below, however, to satisfy this element, Dr. Patterson may demonstrate that "similarly situated" non-protected employees were treated more favorably than they were.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998).  Such so-called "comparators" needn't corollate *exactly* with Dr. Patterson.  *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 511-12 (6th Cir. 2022).  Nor must they be "identical in every way in order to be a proper comparator."  *Tennial v. UPS*, 840 F.3d 292, 304 (6th Cir. 2016).

"The key question is whether any differences between two purportedly similarly situated employees were in fact relevant to the [employer's] disciplinary decisions."  *Strickland v. City of Detroit*, 995 F.3d 495, 513 (6th Cir. 2021).  "When reasonable minds can differ on this factual question, summary judgment is not appropriate."  *Id*.  "[C]omparator evidence" isn't dispositive, "and therefore, a jury should evaluate its relevance."  *Bledsoe v. TVA Bd. of Dirs.*, 42 F.4th 568, 587 (6th Cir. 2022).  "Whether the comparison between similarly situated individuals is sufficiently relevant is itself [also] a jury question."  *Id.*, at 586.

**The WGS Comparators:**

Four "**WGS Comparators**" applied to transfer their tenures to the Center at the same time as Dr. Patterson, for the same reason, and under the Dean's authority: Drs. Mazzei, Odell-Scott, Stacher, and Barnes, [MUNRO-STASIUK DEPO., R.72, at PageID ##4519 and 4664], None of them are transgender. [*Id.*, at PageID #4530] and [MAZZEI DEPO., R.64, at PageID #3113]. All were supervised by Dean Munro-Stasiuk. For example, like Dr. Patterson, Dr. Mazzei is an Associate Professor at KSU. [*Id.*, at PageID #3080].

*Unlike* Dr. Patterson, Dr. Mazzei has no background in women's studies, LGBTQ studies, or transgender studies. [R.64, at PageID #3086]. Nor has she done any coursework in those disciplines. [*Id.*, at PageID ##3108-09]. Rather, Dr. Mazzei's academic background is in political science. [R.72, at PageID #4524]. Drs. Barnes and Stacher also transferred from the political science academic unit. [*Id.*, at PageID #4524]. Dr. Odell-Scott's academic "home" was with the religious studies *minor*. [*Id.*, at PageID #4531].

The general circumstances of Dr. Patterson and the WGS Comparators were also ***identically atypical*** of the transfer process because there wasn't yet a school to transfer ***into***. [MUNRO-STASIUK DEPO., R.72, at PageID ##4519, 4530, and 4664]. The Dean says, however, that Dr. Patterson's circumstances were uniquely atypical because they weren't "moving within their academic unit." [*Id.*, at PageID ##4521-

29

22].  This justification is a sham because the WGS Comparators ***also weren't*** "moving within their academic unit."  [*Id.*, at PageID #4522].

On the one hand, Dean Munro-Stasiuk used her authority and influence to shepherd the less qualified and non-transgender WGS Comparators through the transfer process by coordinating a different transfer process with Faulty Affairs and the AAUP.  [R.72, at PageID ##4519-25] and [WALTON-FISETTE EMAIL, R.72-12, at PageID #4664].  On the other hand, however, there was a ***different, undefined*** process for Dr. Patterson.  [*Id.*, at PageID ##4663-64].

### The RTP Comparators:

Four similarly-situated tenure-track "**RTP Comparators**" applied to transfer their tenures to the Kent Campus during Dr. Trogdon's tenure as English Department Chairs, just like Dr. Patterson, though not at the same time as Dr. Patterson: Drs. Hediger, Roman, Cunningham, and Liske - none of whom are transgender persons. [TROGDON DEPO., R.61, at PageID ##2103-04].  To this end, even when tenure-track professors are considered for tenure by different committees, deans, and advisory committees in different years, they remain "similarly situated."  *Amini v. Case W. Reserve Univ.*, 5 F. Supp. 2d 563, 567 (N.D. Ohio 1998) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

The applications of all but Dr. Liske were approved.  [TROGDON DEPO., R.61, at PageID #2099].  Dr. Liske's tenure transfer request failed because the RTP

Committee looked at his scholarship, teaching, research, and service credentials and found them wanting, which was appropriate and consistent with KSU's policies. [*Id.*, at PageID ##2097-2101]. Dr. Trogdon's testimony, addressed in the discussion about "direct evidence" above, applies equally to the instant discussion and for the same reasons. The discussion among the RTP Members involved only the merits of the applications of the RTP Comparators by applying service, teaching, and scholarship criteria [*Id.*, at PageID #2103], the ***only*** factors that ***should*** be considered ***and discussed***. [*Id.*, at PageID ##2047-2048].

Dr. Trogdon agrees with Dr. Mazzei that the majority of this discussion should focus on the applicant's scholarship. [R.61, at PageID ##2025-26]. In stark contrast, there was ***no discussion*** of Dr. Patterson's "scholarship" or "teaching" on September 24, 2021. [CLEWELL DEPO., R.65, at PageID #3618]. The only discussion of Dr. Patterson's "service" included a vague but "implicit" understanding of "collegiality." [R.65, at PageID ##3623-24].

Dr. Trogdon flatly disagrees. He says that "[c]ollegiality" was the ***dominant*** topic of conversation of Dr. Patterson's application, along with a "veiled" discussion of "fit." [TROGDON DEPO., R.61, at PageID ##2092-98]. However, neither "fit" nor "collegiality" were discussed during the Heidiger, Roman, Cunningham votes, and Liske votes. [*Id.*, at PageID ##2097-99].

At worst, there's at least a genuine question of material fact that both sets of Comparators are similarly situated with Dr. Patterson because their transfer requests **(i)** were for the same purpose, **(ii)** depended on the Dean's authority, **(iii)** were reviewed by the same Committees, who **(iv)** were charged with considering the same criteria **(v)** subject to the same Policy and procedure, and **(vi)** and sought the same result "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Middleton v. Lexington-Fayette Cnty. Urb. Gov't*, No. 22-6040, 2024 U.S. App. LEXIS 4056, at *18 (6th Cir. Feb. 20, 2024) (citing *Mitchell*, 964 F.2d, at 583).

There's also at least a genuine question of material fact that both sets of Comparators **(vii)** were treated more favorably than Dr. Patterson such that a jury could reasonably believe that discrimination based on Dr. Patterson's status as a transgender person motivated the adverse actions they alleged below. *Amini*, 5 F. Supp. 2d, at 568. There's no genuine dispute of material fact that **(viii)** the Dean intervened to make sure the WGS Comparators got what she and they wanted. She did so despite the undisputed fact that the **(ix)** typical, generally applicable procedures *didn't* supply a means to that shared end for the WGS Comparators or Dr. Patterson. There's also no genuine dispute of material fact that she **(v)** applied a *different* process to Dr. Patterson for no discernible reason.

Finally, this Court may not find Dr. Trogdon's accounting of the facts "to be compelling, or even strong," it is far "more than a mere scintilla of evidence." *Everson v. Leis*, 412 F. App'x 771, 776 (6th Cir. 2011) (citing *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 306 (6th Cir. 2008)). To that end, this Court is empowered to reverse the order for summary judgment below based on evidence in the Record that the District Court didn't consider. *Everson v. Leis*, 412 F. App'x 771, 776 (6th Cir. 2011) (citing *Niemi*, 543 F.3d, at 306-07; and *Jibson v. Mich. Educ. Ass 'n-NEA*, 30 F.3d 723, 729 (6th Cir. 1994) (holding that this court reviews a district court's grant of summary judgment based on "a *de novo* review of the evidence in the *entire* record" (emphasis supplied)).

Dr. Patterson established a *prima facie* case of Title VII gender discrimination below, upon which the burden shifted to KSU to "rebut the presumption of discrimination by producing evidence that [Dr. Patterson] was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *LeVine v. Dejoy*, 64 F.4th 789, 797 (6th Cir. 2023). KSU failed to do so. [PATTERSON MSJ OPPOSITION, R.85-1, at PageID ##5161-66]. Though the District Court also didn't address "pretext" below, *LeVine*, 64 F.4th, at 797, Dr. Patterson satisfied that element as well by identifying genuine questions of material fact suggesting that KSU's stated reasons have no basis in fact, are entitled to no credence. [R.85-1, at PageID ##5166-76].

**D.    The District Court erred by granting summary judgment on Dr. Patterson's claim for First Amendment retaliation.**

Section 1983 allows Dr. Patterson to recover damages for violations of the Constitution or a federal statute. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020). To pursue their claim against the Dean, Dr. Patterson must demonstrate the lack of a genuine dispute of material fact that **(a)** they engaged in constitutionally protected speech; **(b)** Dean Munro-Stasiuk took adverse action against them that would cause an injury that would chill a person of ordinary firmness from continuing the activity; and **(c)** her actions were motivated at least in part by Dr. Patterson's exercise of their constitutional rights. *Id.*, at 526.

**1.    The District Court first erred by disregarding two "adverse actions."**

Courts resolve disputes on the merits rather than procedural or technical grounds. *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). "A complaint must contain enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility of an inference depends on a host of considerations, including common sense." *Id.*

The District Court granted summary judgment on Count V, however, based on a finding of no "materially adverse action" and, in the process, excluded Plaintiff's arguments regarding the recission of the Load Lift and the decision not to

offer them a leadership role in the Center, because it deemed those arguments to be an impermissible attempt to amend the Complaint.  [OPINION AND ORDER, R.100, at PageID #5661].   In short, the District Court applied the retaliation **pleading** standards under Civil Rules 8 and 12 at the summary judgment phase and disregarded the claim based on technicalities.

Dr. Patterson also gave the Dean plenty of "notice and provided a **factual predicate** for [their] First Amendment claims for prospective relief," which is all that's required (emphasis supplied).  *Ruffin v. Nicely*, 183 F. App'x 505, 512 (6th Cir. 2006).  The "simplified notice pleading standard" "relies on **liberal discovery rules** and **summary judgment motions** to define disputed facts and issues and to dispose of unmeritorious claims" (emphasis supplied).  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).[5]

"The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."  *Hobart Corp.*

---

[5]    *See also*, *Thomas v. Project C.U.R.E., Inc.*, No. 3:08-cv-0273, 2009 U.S. Dist. LEXIS 129195, at *7 (S.D. Ohio Apr. 24, 2009) (citing *Swierkiewicz*, 534 U.S., at 513-14) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions,"  and "Rule 8(e)(1) states that '[n]o technical forms of pleading or motions are required, and Rule 8(f) provides that '[a]ll pleadings shall be so construed to do substantial justice.'")).

*v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp. 2d 1013, 1019 (S.D. Ohio 2011) (citing *Swierkiewicz*, 534 U.S., at 512-13).

Dean Munro-Stasiuk also didn't argue "lack of notice" below. She's, therefore, barred from doing so for the first time on appeal. *Redbubble*, 989 F.3d, at 443. She had ample notice of Dr. Patterson's allegations because she did discovery into them and attacked them on the merits. The parties flushed out the facts underlying the same in discovery, most significantly the Dean's deposition testimony. The "disfavor" with which the "expansion" of claims is viewed on summary judgment is limited to efforts to assert ***new*** legal claims and theories. *Hunt v. Thorp*, No. 2:21-cv-4636, 2023 U.S. Dist. LEXIS 74047, at *42 (S.D. Ohio Apr. 27, 2023) (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).

Dr. Patterson didn't raise "new" legal claims or theories on summary judgment. They raised "specific theories" that fell within the "more general theory" contained in the Second Amended Complaint based on the same facts always known to the Dean — that is, their briefing articulates their specific theory that the Dean violated the First Amendment by explicitly acting against them ***because of*** their tweets. *Hunt*, 2023 U.S. Dist. LEXIS 74047, at *46 (citing *Bard v. Brown Cty.*, 970 F.3d 738, 750 (6th Cir. 2020)).

Even if Dr. Patterson somehow "expanded" their claims, a "fair reading" of the Second Amended Complaint establishes that the specifics argued on summary judgment are within the parameters of a claim for First Amendment retaliation. "Critical to this inquiry is whether the alleged new or expanded claim causes 'unfair surprise' to the defendant." *Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 788 (6ᵗʰ Cir. 2005). The Dean didn't argue "unfair surprise," either, and is barred from doing so now. *Redbubble*, 989 F.3d, at 443. She also can't plausibly claim to be "surprised" by her deposition testimony.

### 2. Dr. Patterson engaged in constitutionally protected speech.

### a. Dr. Patterson spoke as a private citizen.

Dr. Patterson must first demonstrate that they published their tweets as a private citizen to satisfy this element. *Khatri v. Ohio State Univ.*, No. 5:18-cv-2962, 2020 U.S. Dist. LEXIS 16965, at *23 (N.D. Ohio Jan. 17, 2020) (ADAMS, J.) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Because the District Court skipped this first step, this Court should assume that the "protected speech" element didn't factor at all into the Opinion and Order below and/or that the District Court simply agreed that Dr. Patterson satisfied their burden. Nevertheless, the Dean didn't challenge this element below.

**b.    Dr. Patterson spoke on matters of public concern by criticizing illegal discrimination.**

This Court has "consistently reiterated" that "the public clearly has an interest in hearing [] speech" touching on matters of "discrimination," "misconduct," and "major state policy decisions." *Myers v. City of Centerville*, 41 F.4th 746, 760-61 (6th Cir. 2022).  It's, therefore, an "easy case" for this Court to conclude that Dr. Patterson's speech is "exactly the type of statements" that "demand strong First Amendment protections." *Id.*, at 761.  The content, form, and context of the whole Record below make plain that the point of Dr. Patterson's speech is to address matters like discrimination and other wrongdoing in academia, which are "inherently" "matters of public concern." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 182 (6th Cir. 2008) (citing *Connick*, 461 U.S., at 147 fn.8).

The Dean objected to five categories of Dr. Patterson's speech being protected by the First Amendment cursorily in her Motion for Summary Judgment and without reference to any binding or persuasive authority [R.77, at PageID ##4408-09] and in her Declaration.   [R.69].   This Court typically considers such undeveloped arguments to be waived.  *Rice v. Comm'r of Soc. Sec*, 169 F. App'x 452, 454 (6th Cir. 2006).

 **First**, in paragraph 31 of her Declaration, the Dean says she objects to one tweet referring to "epistemic violence."  [Munro-Stasiuk MSJ, R.77, at PageID #5072] and [R.69, at PageID #4025].  This is a common academic term in Dr.

Patterson's disciplines referring to state actors "shutting down" inquiry into the conditions and circumstances giving rise to discrimination. [Patterson Partial MSJ Reply, R. [PATTERSON DEPO., R.57, at PageID ##1376-77, and 1526]. Dr. Patterson's tweets about the same are protected speech.

**Second**, the Dean complains about profanity like "shit" and "fuckery" in paragraph 36 of her Declaration [R.69, at PageID #4208] because she believes Dr. Patterson crossed a line into a "personal attack." [MUNRO-STASIUK MSJ, R.71-1, at PageID #4409]. Profanity, however, is "properly understood as protected First Amendment content" despite it being distasteful to some. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2315 (2019). *See also*, *Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022) ("profanity alone" doesn't fall outside of the broad protections afforded by the First Amendment). "Vulgarity and profanity" also aren't subject to "time, place, or manner" restrictions in this context because it's impossible to separate such restrictions from the content of free speech. *Iancu*, 139 S. Ct., at 2314 fn.6.3.

**Third**, the Dean says in paragraph 37 of her Declaration that she objects to Dr. Patterson calling the "political science" discipline a "sentient trash heap" because it's contrary to KSU's Faculty Code of Professional Ethics [R.69-10] ("Policy 6-17"). [R.69, at PageID #4208]. There's no corroborating evidence or testimony in the Record, however, supporting the Dean's supposed contemporaneous reliance on Policy 6-17 related to the impropriety of criticizing

other disciplines. [PATTERSON MSJ REPLY, R.89, at PageID #5444]. Moreover, Dr. Patterson's "curricular speech" is a "matter of political, social, or other concern to the community" and is protected. *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.,* 624 F.3d 332, 338-39 (6th Cir. 2010).

**Fourth**, The Dean says in paragraph 36 of her Declaration that she "found Dr. Patterson's use of the term 'usurper' troubling when referring to Dr. Mazzei particularly." [R.69, at PageID #4208]. This is a sham issue because the Dean didn't know *who* the term "usurper" referred to in 2021. [MUNRO-STASIUK DEPO*.,* R.72, at PageID #4592]. She, therefore, *couldn't* have relied on that term in 2021, and it played no part in her decision. Dr. Patterson's speech also doesn't lose First Amendment protection "merely because it is troubling to others." *Marquardt v. Carlton*, No. 21-3832, 2023 U.S. App. LEXIS 2182, at *8 (6th Cir. Jan. 25, 2023). "To the contrary, upsetting speech on public issues still can occupy 'the highest rung of the hierarchy of First Amendment values.'" *Id*. (citing *Connick*, 461 U.S., at 145).

**Fifth**, the Dean says in paragraph 34 of her Declaration that she objected below to Dr. Patterson's use of the term "cis-het white ladies" to refer to her and Dr. Mazzei. [R.69, at PageID #4207-08]. This is another sham issue because her objections to that term didn't arise contemporaneously. The Dean knows the term isn't a "slur" [MUNRO-STASIUK DEPO., R.73, at PageID #4827]. She also knows the term doesn't have doesn't any "inherent[ly] negative connotations." [*Id*., at PageID

#4824].  She also didn't say anything about these concerns in her OCRC Affidavit and knows that Dr. Patterson was speaking within the context of their field of expertise.  [MUNRO-STASIUK DEPO., R.72, at PageID ##4824-25].

The Dean also again directly contradicts her deposition testimony by stating in her Declaration that she believes that Dr. Patterson used "race and sex-based language to identify Dr. Mazzei and [her]," which "had the effect of suggesting that we were less capable and/or competent because of our racial and sexual identities." [R.69, at PageID #4207].  She implied the exact opposite in her Deposition by acknowledging that "it's a term that is used quite often as we have used the term when we've been doing our administrative work, too."  [Munro-Stasiuk Depo., R.73, at PageID #4827].

The only "context" the Dean objects to is her subjective belief that Dr. Patterson's comments were inaccurate and made about her and Dr. Mazzei, [MUNRO-STASIUK DEPO., R.72, at PageID ##4590-93] and [*Id.*, R.73, at PageID #4885], the people in authority.  "Freedom to criticize public officials," however, "is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment."  *Lucas v. Monroe Cnty.*, 203 F.3d 964, 973-74 (6th Cir. 2000)).  It's also settled that "the First Amendment protects the academic speech of university professors."  *Meriwether v. Hardtop*, 992 F.3d 492, 503 (6th Cir. 2021).

The tweets highlighted by the Dean also include general discussions of (i) transgender faculty being passed over for opportunities in favor of candidates with far less research experience and background in the subject matter of the Center and fledgling WGS Major; (ii) threats to Dr. Patterson's participation in the same; (iii) retaliation; (iv) inequity; and (v) "power" dynamics. [MUNRO-STASIUK DECLARATION, R.69, at PageID ##4505-06].

To this end, Dr. Patterson's speech about gender and power conflicts addresses matters of public concern. *Meriwether*, 992 F.3d, at 508. That their speech may be "disruptive" doesn't remove it from constitutional protection just because the "message is disfavored by those in power." *Frenchko v. Monroe*, 672 F. Supp. 3d 421, 455 (N.D. Ohio 2024) (citing *Cornelius v. NAACP Legal Def. Fund, Inc.*, 473 U.S. 788, 806 (1985)).[6]

"[S]peech also involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and value and concern to the public." *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019). Dr. Patterson's speech reflects a broader political and

---

[6]    **Exhibit 160** supplies additional context to Dr. Patterson's tweets between roughly June 16, 2021, and July 10, 2021, in which they objected to workplace discrimination in academia and other topics of interest. [PATTERSON TWEETS, R.73-22, at PageID #4998-5005].

social discussion playing out in the public, in political commentary, and in the press.[7]

Thus, the Dean's alleged concerns that Dr. Patterson's posts are inappropriate,

shocking, or offensive "is ***irrelevant*** to whether it concerns a public matter" and

must be set aside under the First Amendment. *Marquardt v. Carlton*, 971 F.3d 546,

549 (6th Cir. 2020).

> ### c.   Dr. Patterson's interest in speaking freely dwarfs any interest KSU has in organizational harmony.

Next, the Court must balance Dr. Patterson's First Amendment interest

against "the interest of the State, as an employer, in promoting the efficiency of the

public services it performs through its employees." *Khatri*, 2020 U.S. Dist. LEXIS

16965, at **23-24 (citing *Pickering v. Board of Ed. of Township High School Dist.

205, Will Cty.*, 391 U.S. 563, 568 (1968)).  The District Court skipped this analysis,

too.  Nevertheless, Dr. Patterson's interest in speaking about discrimination and the

interests of the community trumps any interest KSU has in "efficient operations."

*Mack v. Holcomb*, 446 F. Supp. 2d 777, 788 (N.D. Ohio 2006) (citing *Love-Lane v.

Martin*, 355 F.3d 766, 780 (4th Cir. 2004)).

---

[7]   The Dean "absolutely" agrees with this.  [MUNRO-STASIUK DEPO., R.73, at PageID ##4848-51].  She also agrees that the principle of  "Academic Freedom" encompasses Dr. Patterson's right to speak publicly about matters touching on their expertise, "without any interference" from KSU.  [*Id.*, at PageID #4793].

The Dean also failed to identify any admissible facts below suggesting any *actual disruption* to KSU caused by Dr. Patterson's tweets, thereby failing her initial burden on summary judgment. This is because there was no workplace for Dr. Patterson *to "disrupt."* KSU was in summer session, and faculty were "off contract." [MUNRO-STASIUK DEPO., R.72, at PageID #4587]. At that time, "[t]here was no work …. [There was] nothing happening." [*Id.*].

### 3. Dean Munro-Stasiuk took adverse action against Dr. Patterson that would chill a person of ordinary firmness from continuing to speak.

The "adverse" actions involved the Dean's revocation of the Load Lift and barring them from a leadership position in the Center. [PATTERSON PARTIAL MSJ, R.75, at PageID ##5032-35]. They reincorporated that discussion into their Memorandum in Opposition to Summary Judgment and relied on it for that purpose. [R.85-1, at PageID #5425]. To establish an adverse action, Dr. Patterson "must show that the action 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019). "[R]etaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Holzemer v. City of Memphis*, 621 F.3d 512, 523-24 (6th Cir. 2010) (citations omitted).

Moreover, "[t]he adverse-action inquiry is a question of fact." *Josephson v. Ganzel*, 115 F.4th 771 (6th Cir. 2024). Likewise, "[w]hether a retaliatory action is

sufficiently severe to deter a person of ordinary firmness from exercising [their] rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). Therefore, "if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising [their] rights, then the act may not be dismissed at the summary judgment stage." *Id*.

The District Court didn't analyze Dr. Patterson's arguments relating to the Load Lift or leadership in the Center. Nor did KSU or the Dean address them in their summary judgment papers beyond the perfunctory. They waived the opportunity to address this part of Dr. Patterson's First Amendment retaliation claim and may not address it for the first time on appeal. *Redbubble, Inc.*, 989 F.3d, at 443. Therefore, there's no genuine dispute that the revocation of Dr. Patterson's leadership role and the Load Lift were "adverse actions" under the First Amendment.

### 4.    The Dean took adverse actions against Dr. Patterson because of the content of their speech.

Dr. Patterson addressed "causation" in their Motion for Partial Summary Judgment. [R.75, at PageID ##5035-36]. At ***worst,*** "causation" is generally a question of fact for the jury. *Yaros v. State Farm Fire & Cas. Co.*, No. 5:24-cv-01411, 2024 U.S. Dist. LEXIS 206519, at *4 (N.D. Ohio Nov. 13, 2024) (citing *Rieger v. Giant Eagle* (2019), 157 Ohio St. 3d 512, 516, 138 N.E.3d 1121).

There was no genuine dispute of material fact below, however, because Dean Munro-Stasiuk admitted during her deposition that the "foundation" for excluding

Dr. Patterson from a leadership position in the Center was Dr. Patterson's tweets. [MUNRO-STASIUK DEPO., R.73, at PageID ##278-79]. She also testified that certain tweets attributed to Dr. Patterson **caused her** to rescind the Load Lift. [MUNRO-STASIUK DEPO., R.72, at PageID #167].

The Dean didn't address Dr. Patterson's "causation" argument at any point beyond perhaps a passing mention. Thus, she waived the issue and can't raise it for the first time on appeal. *Redbubble, Inc.*, 989 F.3d, at 443. The District Court, however, *sua sponte* held that despite the Dean's unambiguous admissions, Dr. Patterson **can't** establish causation. [OPINION AND ORDER, R.100, at PageID #5663]. It did so based on Dr. Patterson's subjective misunderstanding of when the Dean acted against them **based on the content of their speech**. [*Id.*]. That Dr. Patterson was mistaken as to timing doesn't somehow nullify the Dean's admissions.

> **5.    The Dean isn't entitled to qualified immunity because Dr. Patterson's First Amendment right to be free of retaliation for objecting to illegal discrimination and to speak to similar matters of public concern is clearly established.**

The qualified immunity doctrine prevents government actors from being held liable for conduct that "doesn't violate clearly established statutory or constitutional rights, of which a reasonable person would have known." *Ryan*, 979 F.3d, at 527. The District Court didn't address the Dean's spartan arguments along these lines. [MUNRO-STASIUK MSJ, R.71-1, at PageID ##4411-12] and [MUNRO-STASIUK OPPOSITION TO PARTIAL MSJ, at R.77, at PageID ##5078-81]. Nor did it address Dr.

Patterson's arguments in opposition. [PATTERSON MSJ REPLY, R.89, at PageID ##5452-53].

Nevertheless, the "salient question" is whether "the state of the law" gave Dean Munro-Stasiuk "fair warning" that her actions were unconstitutional. *MacIntosh v. Clous*, 69 F.4th 309, 319 (6th Cir. 2023). The answer is clear: "**Yes**." "[A] public employer may not retaliate against an employee for [their] exercise of constitutionally protected speech," ***and all*** "public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern." *Myers*, 41 F.4th, at 766.

The constitutional right at issue is Dr. Patterson's right as a public employee not to be subjected to retaliation for engaging in First Amendment activity, which is undeniably "established." *McElhaney v. Williams*, 81 F.4th 550, 556-57 (6th Cir. 2023). Their First Amendment right to challenge "sex-based discrimination" within the workplace is also "clearly established." *Buddenberg*, 939 F.3d, at 741. Thus, there is "no doubt" that Dean Munro-Stasiuk was "on clear notice that [Dr. Patterson's] speech would be considered a matter of public concern protected by the First Amendment." *Id.*

E.    **The District Court erred as a matter of law by disregarding Dr. Patterson's Title VII retaliation claim *in toto*.**

As it did to half of Dr. Patterson's claim for First Amendment retaliation, the District Court disregarded ***all*** of their Title VII retaliation claim because:

> Count I does not assert that Plaintiff engaged in a protected act, let alone what that protected act was, or that Kent State was aware of any alleged protected act. Because retaliation was not pled, there is nothing for the court to analyze. The claim simply does not exist.

[OPINION AND ORDER, R.100, at PageID ##5645-46].  This was error for the same reasons as it was for First Amendment retaliation.

Additionally, the requirements for establishing a *prima facie* case for Title VII retaliation, particularly, don't "apply to the pleading standard that plaintiffs must satisfy [to] survive a motion to dismiss."  *Parker v. Hankook Tire Mfg. Tenn.*, LP, No. 23-5208, 2023 U.S. App. LEXIS 34010, at *6 (6th Cir. Dec. 21, 2023) (citing *Swierkiewicz*, 534 U.S., at 511).  At the summary judgment stage, "a plaintiff has flexibility in ***how*** [they meet] that initial burden, and variance based on the facts of the case is expected" (emphasis supplied).  *Serrano v. Cintas Corp.*, 699 F.3d 884, 894 (6th Cir. 2012).  The *McDonnell Douglas* analysis is an "evidentiary standard, not a pleading requirement." *Id.*, at 897 (citing *Swierkiewicz*, 534 U.S., at 510).

Construing the Second Amended Complaint in the light most favorable to Dr. Patterson, without imposing technical forms, and to do substantial justice, KSU can't

plausibly claim to not have notice of Dr. Patterson's Title VII retaliation claim. Dr. Patterson alleges in the first paragraph of the Second Amended Complaint that:

> [They seek] redress against [KSU] for employment discrimination in violation of [Title VII], when it discriminated against them in their occupation, employment, advancement, and career based on their sex, gender, gender identity, and gender expression on pretextual grounds, and retaliated against them on the same or similar bases.

[R.37-1, at PageID #709].

Dr. Patterson also alleges that "On July 19, 2021, Dean Munro-Stasiuk emailed [them] to inform them that she was further retaliating against them" by revoking the Load Lift, [R.37-1 at PageID #721], and "[u]pon absorbing [that retaliation], Dr. Patterson elected to pursue the transfer of their tenure to Kent State's English Department." [*Id.*, at PageID #722]. "[T]he Complaint need not present additional factual allegations." *Thomas v. Project C.U.R.E., Inc.*, No. 3:08-cv-0273, 2009 U.S. Dist. LEXIS 129195, at **7-8 (S.D. Ohio April 24, 2009) (citing *Swierkiewicz*, 534 U.S., at 515). Thus, a lack of explicit allegations in the Second Amended Complaint isn't fatal on summary judgment. *Hunt*, 2023 U.S. Dist. LEXIS 74047, at *45 (citing *Grinnell v. City of Taylor*, No. 21-2748, 2022 U.S. App. LEXIS 13540, at **14-15 (6th Cir. May 18, 2022)).

The district court said, however, that "[a]ny attempt to remedy [a pleading deficiency] through briefing or by pointing to discovery responses is an inappropriate way to amend the complaint." [OPINION AND ORDER, R.100, at PageID

#5646].   The Sixth Circuit rejected this premise in *Grinnell* by relying on information gleaned in discovery to conclude that "the record is quite clear that [plaintiff] intended to bring [a particular] claim, and that Defendants had notice of his intent." *Grinnell*, 2022 U.S. App. LEXIS 13540, at **15-16.  As below, "[i]t was only when seeking summary judgment that Defendants decided to question whether such a claim was actually raised." *Id.*, at *16.

Further, KSU didn't argue that Dr. Patterson's Title VII retaliation claim shouldn't be considered on summary judgment *in toto*, based on the Second Amended Complaint.  KSU also didn't argue that Dr. Patterson's Title VII retaliation claim doesn't "exist."  Defendants' understood Dr. Patterson's claim and attacked it on the merits based on its take on the information gleaned in discovery.

To establish a *prima facie* case, Dr. Patterson must demonstrate that **(a)** they engaged in activity protected by Title VII; **(b)** their exercise of such protected activity was known by KSU; **(c)** thereafter, KSU took an action that was "materially adverse" to them; and **(d)** a causal connection existed between the protected activity and the materially adverse action.  *Laster*, 746 F.3d, at 730.

In their Opposition to KSU's Motion for Summary Judgment, Dr. Patterson argued that they engaged in "protected activity" when they emailed Drs. Gooden, M'Baye, Davis-Patterson, and Deb Smith, to report discrimination by the Dean related to the goings on in the Center.  [R.85-1, at PageID #5430].  *See also*,

"**Exhibit DD**," [R.57-12, at Page ID #1599]; "**Exhibit EE**," [Doc.57-13, at PageID #1600]; "**Exhibit FF**," [R.57-14, at PageID #1601]; and "**Exhibit 511**." [Doc.82-10, #5279].

Dr. Patterson also alleged that KSU knew about their protected activity because they reported it to persons in positions of authority. [85-1, at PageID #5431]. In particular, on May 22, 2022, Dr. Gooden submitted an Affidavit in support of KSU's opposition to Dr. Patterson's OCRC Complaint. "**Exhibit 512**" [R.82-11, at PageID #5283]. In the same, Dr. Gooden said that she spoke with the Dean about Dr. Patterson's concerns about discrimination. [*Id*.] There's, therefore, at least a genuine question of material fact that Dean Munro-Stasiuk knew about Dr. Patterson's objections to discriminatory conduct, generally and specifically as to the Center.

Dr. Patterson realleges the "adverse actions" discussed above. To this end, their burden of establishing a materially adverse employment action is "*less onerous* in the retaliation context than in the anti-discrimination context" (emphasis supplied). *Laster*, 746 F.3d, at 731. To do so, Dr. Patterson "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. In analyzing the significance of any given act of retaliation, "[c]ontext matters." *Id*.

"This more liberal definition permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context." *Laster,* 746 F.3d, at 731-32. In the context of this case, excluding Dr. Patterson from programs that contribute significantly to their professional advancement, as discussed above, would deter a reasonable employee from complaining about discrimination. *Id.*, at 731. KSU didn't address causation beyond the cursory, if at all, and therefore waived it.

**F.     The District Court erred as a matter of law by granting summary judgment on Dr. Patterson's Section 504 for "regarded as" disability discrimination.**

"Regarded as" disability discrimination addresses employees who are "regarded as" disabled, "but in reality, are not (and therefore can perform the essential functions of their job without accommodation)." *Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764, 776 (6th Cir. 2011). "Thus, it is not necessary [that KSU] have specific knowledge that [Dr. Patterson] was substantially limited in a major life activity for [them] to show [they were] regarded as disabled." *Bracken v. Dasco Home Med. Equip., Inc.*, No. 1:12-cv-892, 2014 U.S. Dist. LEXIS 123978, at *36 (S.D. Ohio Sep. 5, 2014)).

To survive summary judgment, Dr. Patterson must show that **(a)** they had a disability or perceived disability; **(b)** that they were otherwise qualified for their position; and **(c)** they were excluded from participation in or denied the benefits of

developing the Center or subjected to discrimination because of their disability or perceived disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). The District Court didn't address **elements (a)** or **(b)**. KSU didn't dispute Dr. Patterson's qualifications below and has therefore waived any argument on appeal.

Nevertheless, there's no genuine dispute of material fact that Dr. Mazzei "regarded" Dr. Patterson as being "mentally unstable" or as suffering from a "mental health condition" no later than July 9, 2021. [MAZZEI DEPO., R.64, at PageID ##3192-93]. "Mental instability" and the like fall squarely within the definition of a "mental impairment" under the ADA, 42 U.S.C. §2102(1)(A). *Mbawe v. Ferris State Univ.*, 751 F. App'x 832 (6th Cir. 2018).

When Dr. Mazzei and Dee Warren immediately reported what they'd allegedly learned from Dr. Holt to the Dean, under the "cat's paw" theory of liability, there's at least a genuine dispute of material fact that they "duped" Dean Munro-Stasiuk into taking adverse action against Dr. Patterson by selectively reporting information allegedly reported to them. *Wormald v. Overhead Door Corp.*, No. 5:21-cv-00585, 2022 U.S. Dist. LEXIS 187577, at **18-19 (N.D. Ohio Oct. 13, 2022) (ADAMS, J.) (citing EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476 (10th Cir. 2006)). "Cat's paw" refers to a situation in which a biased subordinate "dupes" the formal decisionmaker to "trigger a discriminatory employment action." *Id.*, at *18 (citing *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 380 (6th Cir. 2017)).

To this end, the Dean did no other investigation [MUNRO-STASIUK DEPO, R.72, at PageID ##4587-88] or review Dr. Patterson's text messages that supposedly precipitated Dr. Holt's meeting with Dr. Mazzei. [*Id*., at PageID #4572]. For the Dean, the report of Dr. Mazzei and Dee Warren "was absolutely a tipping point for [her]" in her decision to rescind Dr. Patterson's Load Lift. [MUNRO-STASIUK DEPO., R.73, at PageID #4808].

Finally, KSU argued below that Dr. Patterson's claim arising under Section 504 must fail because they failed to identify a "materially adverse change in the terms and conditions of employment[.]" [KSU MSJ, R.70-1, at PageID #4377]. The District Court agreed and didn't look beyond the "adverse action" element because the legal standard is the same as under Title VII. [OPINION AND ORDER, R.100, at PageID #5659]. Indeed, we do apply the same standard to Title VII and ADA/Section 504 discrimination claims. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

As one District Court recently observed along these lines, the relevant text of the ADA "parallels" the text of Title VII. *Florek v. Creighton Univ.*, No. 8:22-cv-194, 2024 U.S. Dist. LEXIS 195494, at *58 (D. Neb. Oct. 18, 2024). The Sixth Circuit hasn't yet weighed in on *Muldrow's* application for disability discrimination. In *Milczak,* however, the Court applied *Muldrow* to ADEA claims because the

relevant text of that statute also parallels Title VII. *Milczak*, 102 F.4th, at 787. The same is true under Section 504 and the ADA. *Nguyen,* 229 F.3d, at 563.

The Eleventh Circuit has already extended *Muldrow* to ADA claims. *Davis v. Orange Cty.*, No. 23-12759, 2024 U.S. App. LEXIS 17964, at *10 (11th Cir. July 23, 2024). The same goes for the First Circuit. *Rios v. Centerra Group LLC*, 106 F.4th 101 (1st Cir. 2024). Likewise, the Fifth Circuit. *Versaggi v. KLS Martin, L.P.*, No. 21-20547, 2024 U.S. App. LEXIS 12222 (5th Cir. May 21, 2024). The Third Circuit is all but certain to conclude the same. *Leon v. Bensalem Twp. Sch. Dist.*, No. 23-01374, 2024 U.S. Dist. LEXIS 141688 (E.D. Pa. Aug. 9, 2024). The same result would likely occur in the Second Circuit. *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 1:23-cv-01932, 2024 U.S. Dist. LEXIS 146325, at **24-25 (S.D.N.Y. Aug. 16, 2024).

Like Title VII, the "operative provision[s]" of the texts of the ADA and Section 504 don't require any "serious, material, or 'objectively tangible harm.'" *Florek*, 2024 U.S. Dist. LEXIS 195494, at **59-60. "Therefore, the text of [Section 504] ***does not*** support the materiality requirement," either (emphasis supplied). *Id.*, at *60. "Given the parallel development of the two statutes, it would be anomalous to impose a different, heightened standard for adverse action in the [disability] context, especially without any textual basis for the result." *Id.*, at **60-61.

55

There's no risk of disparate results just because Dr. Patterson's disability discrimination claim arises under Section 504 and not the ADA. Title II and Section 504 "are similar in purpose and scope because they prohibit discrimination based on actual or perceived disability." *Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 849 (6th Cir. 2009); and *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). Indeed, "the reach and requirements of both statutes are precisely the same." *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008).

## CONCLUSION

Due to the foregoing, the Court of Appeals should reverse the District Court's entries of summary judgment on Counts I, IV, and V of the Second Amended Complaint, respectively, for Title VII gender discrimination, Section 504 disability discrimination, and First Amendment retaliation, and remand with instructions consistent with the same.

**DATED: December 26, 2024**

Respectfully submitted,

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
Tel: (513) 457-5545
Fax: (513) 436-0689 (Fax)
Justin@WhittakerLawFirm.com

**Appellate Counsel for**
**Appellant GPat Patterson, Ph.D.**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned certifies that the foregoing was prepared in Microsoft Word for Mac, Version 16.91, in 14-point Times New Roman typeface. The undersigned also certifies that the foregoing contains 12,818 words based on the "Word Count" function of Microsoft Word for Mac, Version 16.91, and therefore complies with the type-volume limitation stated in Appellate Rule 32(g).

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (0093212)

**Appellate Counsel for**
**Appellant GPat Patterson, Ph.D.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on **December 27, 2024**, I served the foregoing document on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

*/s/ Justin Whittaker_____*
Justin Whittaker, Esq. (0093212)

**Appellate Counsel for**
**Appellant GPat Patterson, Ph.D.**
